## WILLIAM POLK v. STEPHEN COSTON.

Supreme Court.   October 20, 1800.

*Wilson's Red Book, 308.*

*Hall, Vining,* and *Wilson* for plaintiff.   *Broom* and *Bayard* for defendant.

This was trover for hogs; conditional verdict, forty dollars.

Plaintiff and defendant were together at a vendue.  · The former had purchased hogs at twenty shillings, the latter a bull at three pounds.  A proposition was made to toss up which should take the whole.  Plaintiff cast the money up, and defendant called "Heads I win, tails you lose."  It fell tails up.  Plaintiff said, "Is it fair?"  And [a] bystander said, "Don't you see?"  Defendant

called for liquor, and plaintiff did not discover the imposition. W. D. purchased the hogs of defendant, and upon plaintiff's order he was allowed to take them away.

Defendant's counsel urged in support of the demurrer that plaintiff had never had the possession of the hogs, nor even the right of possession, until defendant had sold his right to them, because plaintiff had not paid for them, and either possession or a right to possess ought to be shown in trover, 7 Term 9, 11. That there was also a defect of evidence of possession in defendant, who was not possessed at any time. It is a rule that when trover lies, detinue lies, and yet defendant must have possession in detinue, 5 Bac.Abr. 257, A. pl. 4, 5. That the wager was a fair one, there was no deception. Visible defects are no breach of a warranty. Plaintiff deceived himself and ought not to impute it [to] defendant, for there was no shadow of fraud on his part. There is no necessity that there should be a risk or contingency to make a lawful wager. Ninety-nine times in one hundred there is no risk. When two set off on a race, it is physically certain that one will prevail; yet the wager is good. Nor is it necessary that the parties should have the same ideas; for no doubt if Columbus had laid a wager that he could make an egg stand on one end, he would have won it fairly if he had struck one end upon the table to do it, though his companions had tried to do it in vain. The cases cited by Espinasse [in his Digest of the Law of Nisi Prius] p. 17, 18, do not support his doctrine of contingency, for those wagers were neither of them contingent, but absolutely certain, and yet were held good. It is not so important that the fact supposed contingent should be unknown, as that the party should have a fair chance to know and see the truth, and in this case both parties had an equal chance for knowledge. When the plaintiff said, "Is it fair?" the company say, "Don't you see?" There was no delivery until it was made to E. D., and it is the delivery transfers the property; therefore, neither plaintiff nor defendant ever had the property.

Plaintiff's counsel. It must be acknowledged that absolute contingency is not necessary to a fair wager, and that the cases cited by Espinasse from 5 Burr. 2803 and Cowp. 37 do not establish the necessity of such contingency. Yet it is equally clear that those cases show the necessity in every fair wager that there should be a moral uncertainty or contingency in the event; that is, although the event may be certain in itself, yet the parties must be uncertain of it. This is the kind of uncertainty which Espinasse produces those cases to prove the necessity of, for he explains the contingency which he holds to be necessary by saying, "the event should be unknown to the parties at the time of

laying the wager." It is evident that if in the case cited from Burrow's Reports the winner had known the other's father to be dead, as he really was, he could not have recovered; the event would not have been contingent to him, but certain. In this case Coston was at no uncertainty, for if it had fallen heads or tails, he must necessarily have been safe. There was therefore not only no risk, but no uncertainty on his side. It cannot therefore be established as a lawful wager. It is stated in the demurrer that afterwards defendant said he was not a fool to throw up three pounds against twenty shillings. Taking this with the expression made use of at the call, there is clear proof of a fraudulent intention to deceive the plaintiff and obtain his property for nothing, and therefore the whole transaction is void, and plaintiff entitled to the value.

The objection that no property vested for want of delivery is not supported; the hogs, it appears, were enclosed in a pen and were in view at the time they were bidden off, and it would not be necessary to take hold of them with the hand. Here was sufficient delivery if it had even been a gift, which is ineffectual unless accompanied by delivery; but in cases of sales no delivery is necessary to vest the property, which passes by the sale, 2 Com.Dig. 138. Yet a sale will be esteemed fraudulent as to creditors without possession, 2 Esp.[N.P.] 540. The property consequently vested in the plaintiff. He at the same [time] acquired a right to the immediate possession. His not having paid the money is no objection, for unless the money had been paid, security was to have been given, if required. Now it does not appear that security was required, and therefore the case stands as if it had been given. The case cited from 7 Term 11 does not show that actual possession must have been in plaintiff to have maintained trover, for a right to possess is there held to be sufficient, which agrees with [2] Esp.[N.P.] 576. Executor may bring trover for a conversion in the lifetime of his testator, 1 Com.Dig. 311, Cro.Eliz. 377, and he certainly has only a right of possession. So a landlord may bring trover for timber which is cut down pending the lease, because, as soon as it is severed, he has a right to the possession, Cro.Car. 242, 7 Term. 13.

With the right of property, the right of possession vested in the plaintiff, which does entitle him to sue. On the other hand, it is not necessary that defendant should have had actual possession. He sold the hogs and received the money for them. Plaintiff in an execution has sufficient possession to be sued in trover, 2 Str. 996, yet it is very clear he could have had no actual possession, the sheriff being the person who levied and sold.

It cannot avail the defendant that plaintiff gave E. D. an order to receive the hogs, for defendant's sale of them to E. D. was a conversion of them anterior to the order, but there is no more importance attached to the direction to deliver to the purchaser from defendant than there was to the first assent of plaintiff that the hogs were defendant's by winning. The defendant was still under the same deception, and it was but one act. The order, as well as the first assent (which had really transferred possession to defendant and rendered the subsequent order idle and useless), were evidently made and given by plaintiff under an impression of defendant's right; but it turned out he had no right, and that plaintiff had been cheated and imposed upon, which rendered the delivery void as to all matter of right and entitled the plaintiff to reclaim the property for which this action was brought, and which cannot be barred, unless by a "fair and regular transfer of the thing in question."

PER CURIAM. JOHNS, C. J. This is a demurrer to an action of trover for hogs. It appears the property was bidden off by plaintiff; that he never had the possession or paid the money according to the terms of the sale, but that he afterwards did. It also appears by the demurrer that a wager was made with Coston, who won, and that he sold the property to D. and received the money. It appears that by plaintiff's order the hogs were delivered to D. We are of opinion the wager was fraudulent and void and left the property in Polk. Defendant's counsel have urged that the delivery, if the wager was not valid, passed the property and that Coston never had possession. We think Polk parted with his right by the order to deliver to Coston. Suppose this action was against D., could there be a doubt that the order and receipt was a good defense? In trover the plaintiff must have a general or special property. Here plaintiff had parted with his property, and his remedy, if any, should have been a special action on the case; and therefore we shall give judgment for the defendant on the demurrer.